UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| JESSE DREWNIAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-852-LM |
| | ) | |
| | ) | |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S COMPLAINT

Defendants U.S. Customs and Border Protection, U.S. Border Patrol, and Robert N. Garcia, in his official capacity as Chief Patrol Agent of Swanton Sector, U.S. Border Patrol, (Defendants) respond to Plaintiff's Complaint as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff lacks standing to bring this action, depriving this Court of subject matter jurisdiction.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief may be granted.

## THIRD AFFIRMATIVE DEFENSE

Defendants further respond to Plaintiff's Complaint, by addressing the specifically numbered paragraphs of the complaint as follows:

1.      Defendants deny that Mark A. Qualter and Jeremy Forkey are defendants to this action and that this action claims damages.  Document Numbers (DN) 23, 49.  Defendants admit

that the allegations of paragraph 1 characterize Plaintiff's claims but deny that Plaintiff's civil rights have been violated or that he is entitled to injunctive relief.

2.      The first sentence of paragraph 2 of Plaintiff's Complaint solely consists of averments of law to which no response is required.  To the extent the Court requires a response, Defendants deny the allegations contained in the first sentence of paragraph 2.  Defendants deny the allegations contained in the second sentence of paragraph 2 of Plaintiff's Complaint.

3.      Defendants admit that on August 25-27, 2017, they conducted an immigration checkpoint, at which members of the Woodstock Police Department were present, on I-93 South in Woodstock, New Hampshire (Woodstock Checkpoint); that much of the traffic on I-93 South was required to pass through it; and that canines trained to detect concealed humans and controlled substances made free air sniffs of some, but not all, vehicles that passed through the checkpoint.  Defendants deny any remaining allegations contained in the first sentence of paragraph 3 of Plaintiff's Complaint.

Defendants deny the allegations contained in the second sentence of paragraph 3 of Plaintiff's Complaint to the extent it implies that warrants or reasonable suspicion are required to stop traffic entering an immigration checkpoint.  Defendants also deny vague characterizations in the second sentence regarding "lengthy traffic jams" and "countless people."  Defendants admit that the Woodstock Police Department charged 30 individuals with violations of state law, but are without sufficient knowledge or information to form a belief as to the remaining allegations contained in the third and fourth sentences of paragraph 3 and therefore deny them.

Defendants admit that 25 apprehensions were made for violations of the Immigration and Nationality Act, §§ 212(a)(6)(A)(i) and 237(a)(1)(B), 11 of those apprehensions were for entry into the United States without inspection, but is without sufficient knowledge or information to

form a belief as to whether those entries were through Canada and, therefore, deny the allegation that no individual was apprehended for unlawfully crossing the Canadian border.  Defendant deny the remaining allegations contained in the fifth sentence of paragraph 3 of Plaintiff's Complaint.

4.      Defendants admit that Plaintiff Jesse Drewniak is a United States citizen and a claimed resident of New Hampshire, but deny the remaining allegations contained in the first sentence of paragraph 4 of Plaintiff's Complaint.  Defendants admit that Mr. Drewniak was a passenger in a vehicle which passed through the Woodstock Checkpoint, but are without knowledge or information to form a belief as to the truth of the remaining allegations contained in the second sentence of paragraph 4 of Plaintiff's Complaint and, on that basis, deny them. Defendants admit the vehicle in which Mr. Drewniak was a passenger was processed through the Woodstock Checkpoint and subjected to a secondary inspection, but deny any remaining allegations contained in the third sentence of paragraph 4 of Plaintiff's Complaint.  Defendants admit that after Border Patrol Agents discovered illegal substances in the vehicle in which Plaintiff was traveling, they detained and ultimately referred him to a Woodstock Police officer who was at the checkpoint.  Defendants deny the remaining allegations contained in the fourth sentence of paragraph 4 of Plaintiff's Complaint.  Defendants deny the allegations contained in the fifth sentence of paragraph 4 of Plaintiff's Complaint.  Defendants admit the allegations contained in the sixth sentence of paragraph 4.  Defendants deny the allegations contained in the seventh sentence of paragraph 4 of Plaintiff's Complaint.  Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in the eighth sentence of paragraph 4 of Plaintiff's Complaint and, on that basis, deny them.

5.     Defendants deny the allegations contained in paragraph 5 of Plaintiff's Complaint.

6.     Defendants admit that the New Hampshire 2nd Circuit (District Division) in Plymouth presided over the criminal charges arising out of the Woodstock Checkpoint, and defers to the state court record, which speaks for itself, for the specifics of the court's findings. Defendants deny specifically that the Woodstock "[C]heckpoint was pretextual where Border Patrol used the ruse of immigration enforcement to engage in general crime control in violation of [*City of Indianapolis* v.] *Edmond* [, 531 U.S. 32 (2000)]."   Defendants deny any remaining allegations contained in paragraph 6 of Plaintiff's Complaint.

7.     Defendants deny the allegations contained in the first sentence of paragraph 7 of Plaintiff's Complaint.  Defendants deny the allegations contained in the second sentence of paragraph 7, further stating that Plaintiff's claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) are no longer part of this action.  DNs 23, 49.

8.     Defendants deny the allegations contained in the first sentence of paragraph 8 of Plaintiff's Complaint.  Defendants are without sufficient knowledge to form a belief as to the truth of the allegations regarding Plaintiff's travels to the White Mountains and, therefore, deny those allegations.  Defendants deny the remaining allegations contained in the second sentence of paragraph 8 of Plaintiff's Complaint.  Defendants admit that the third sentence solely consists of Plaintiff's request for relief but deny that Plaintiff is entitled to the requested relief.

9.     Defendants deny the allegations contained in paragraph 9 of Plaintiff's Complaint.

10.     Defendants deny that any *Bivens* claims remain.  DNs 23, 49.  Defendants admit that paragraph 10 of Plaintiff's Complaint describes the basis for Plaintiff's remaining claims, but deny Plaintiff's entitlement to the requested relief.

11.     Paragraph 11 of Plaintiff's Complaint solely consists of a conclusion of law to which no response is required.  To the extent this Court requires a response, Defendants deny the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.     Paragraph 12 of Plaintiff's Complaint solely consists of a conclusion of law to which no response is required.  To the extent this Court requires a response, Defendants admit the allegations contained in paragraph 12 of Plaintiff's Complaint.

13.     Defendants admit that Plaintiff is a United States citizen but are without knowledge of information to form a belief as to the truth of the remaining allegations contained in paragraph 13 of Plaintiff's Complaint and, on that basis, deny them.

14.     Defendants admit that U.S. Customs and Border Protection (CBP) is a component of the U.S. Department of Homeland Security (DHS) and that the U.S. Border Patrol (USBP) is a component of CBP.  DHS and its components agencies are primarily responsible for the initial processing and detention of individuals for immigration and customs violations who are encountered near the United States border, including at ports of entry.  Defendants deny any remaining allegations contained in paragraph 14 of Plaintiff's Complaint.

15.     Defendants admit the allegations contained in paragraph 15 of Plaintiff's Complaint.

16.     Because Mr. Qualter is no longer a defendant to this action (DN 49), no response to paragraph 16 of Plaintiff's Complaint is required.  Should a response be required, the

Defendants deny that Mr. Qualter searched and seized the defendant without any reasonable suspicion of criminal activity.

17.     Because Mr. Forkey is no longer a defendant to this action (DN 23), no response to paragraph 17 of Plaintiff's Complaint is required.  Should a response be required, the Defendants deny the allegations in the last sentence of paragraph 17.

18.     Defendants admit that Robert N. Garcia is currently the Chief Patrol Agent of Swanton Sector and that during the relevant time period, Garcia served as the Deputy Chief Patrol Agent, Acting Chief Patrol Agent, and Chief Patrol Agent, acting under color of law. Defendants also admit that Swanton Sector's area of responsibility encompasses some 24,000 square miles and includes all of the state of Vermont; Clinton, Essex, Franklin, St. Lawrence, Hamilton, and Herkimer Counties of New York; and Coos, Grafton, and Carroll Counties of New Hampshire.  This area includes 295 miles of International Boundary, from the Maine-New Hampshire state line on the east, to Alexandria Bay on the St. Lawrence River in New York. Defendants admit that Chief Patrol Agent Garcia is being sued in his official capacity. Defendants deny any remaining allegations contained in paragraph 18.

19.     Paragraph 19 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants deny the allegations contained in paragraph 19.

20.     Defendants are without sufficient knowledge of information to form a belief as to the truth of the allegations contained in paragraph 20 of Plaintiff's Complaint and, on that basis, deny them.

21.     Paragraph 21 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants deny the allegations contained in paragraph 21.

22.     Paragraph 22 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants state that 8 C.F.R. § 287.8(b)(2) speaks for itself, and deny the remaining allegations contained in paragraph 22.

23.     Paragraph 23 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants state that the quoted cases speak for themselves, and deny the remaining allegations contained in paragraph 23.

24.     Paragraph 24 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants state that the quoted cases speak for themselves, and deny the remaining allegations contained in paragraph 24.

25.     Paragraph 25 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants state that the quoted cases speak for themselves, and deny the remaining allegations contained in paragraph 25.

26.     Paragraph 26 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants state that the quoted cases speak for themselves, and deny the remaining allegations contained in paragraph 26.

27.     Paragraph 27 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants state that the quoted cases speak for themselves, and deny the remaining allegations contained in paragraph 27.

28.     Paragraph 28 of Plaintiff's Complaint solely consists of legal conclusions and questions of law to which no response is required.  To the extent this Court requires a response, Defendants deny the allegations contained in paragraph 28.

29.     Defendants admit that CBP is one of the largest federal law enforcement agencies in this country, with numerous certified law enforcement officers and agents who patrol and/or guard one of the widest physical areas of responsibility in the nation.  Its national budget, which varies yearly, is publicly available.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 29 of Plaintiff's Complaint and, on that basis, deny them.

30.     Defendants deny the allegations contained in the first sentence of paragraph 30 of Plaintiff's Complaint.  The remaining allegations purport to support Plaintiff's allegations by citations to public source material, which speaks for itself, and are largely irrelevant to the issues in this lawsuit.  To the extent this Court requires a response to the remaining allegations contained in paragraph 30 of Plaintiff's Complaint, Defendants deny them.

31.     Defendants admit that when narcotics violations are discovered at an immigration checkpoint, the narcotics are seized as contraband in accordance with federal law and may be turned over to state or local law enforcement.  Defendants deny any remaining allegations contained in the first sentence of paragraph 31 of Plaintiff's Complaint.  The remaining allegations purport to support Plaintiff's allegations by citations to public source material, which

speaks for itself, and are largely irrelevant to the issues in this lawsuit.  To the extent this Court requires a response to the remaining allegations contained in paragraph 31 of Plaintiff's Complaint, Defendants deny them.

32.     Defendants admit that when narcotics violations are discovered at an immigration checkpoint, the narcotics are seized as contraband in accordance with federal law and may be turned over to state or local law enforcement.  Defendants state that it maintains, updates, and routinely publishes nationwide statistics that are publicly accessible on www.CBP.gov relating to the discovery and seizure of illegal narcotics at U.S. Border Patrol immigration checkpoints prohibited under the Federal Controlled Substances Act.  However, the statistics included in this paragraph cover a timeframe when no immigration checkpoints were conducted in New Hampshire and, therefore, are unrelated to this litigation and, on that basis, Defendants deny them.  Defendants also deny any remaining allegations contained in paragraph 32 of Plaintiff's Complaint.

33.     Defendants admit that CBP does not currently publish nationwide statistics on www.CBP.gov relating to immigration apprehensions at immigration checkpoints, but that nationwide statistics of immigration apprehensions generally are published and publicly accessible on www.CBP.gov.  Defendants aver, however, that immigration apprehension statistics relating to immigration checkpoints are frequently published through regional press releases and official CBP statements that are publicly available.  Defendants specifically deny that the failure to publish the questioned data in any way diminishes the fact that interior checkpoints have the primary purpose of detecting and apprehending undocumented individuals as well as any other allegations contained in paragraph 33 of Plaintiff's Complaint.

34.     Defendants admit that nationwide data does show that the total immigration apprehensions are lower along the Northern Border than the Southwest Border of the United States but aver that the immigration enforcement mission is equally critical along all its international boundaries.  The remaining allegations purport to support Plaintiff's allegations by citations to public source material, which speaks for itself, and are largely irrelevant to the issues in this lawsuit.  To the extent this Court requires a response to the remaining allegations contained in paragraph 34 of Plaintiff's Complaint, Defendants deny them.

35.     Defendants admit that, as part of its critical border security mission along all international borders, they enforce Federal narcotics laws.  Defendants lack sufficient knowledge to admit or deny the remaining allegations contained in paragraph 35 of Plaintiff's Complaint and, on that basis, deny them.

36.     Defendants admit that illegal cross-border activity along the Northern Border is comprised of outbound and inbound entries without inspection in violation of Federal law, both of which create unique and complex threats to the safety and security of the United States' international border.  Defendants further admit that outbound illegal activities into Canada may exceed the inbound illegal activity.  The remaining allegations purport to support Plaintiff's allegations by citations to public source material, which speaks for itself, and are largely irrelevant to the issues in this lawsuit.  To the extent this Court requires a response to the remaining allegations contained in paragraph 36 of Plaintiff's Complaint, Defendants deny them.

37.     Defendants deny the allegations contained in paragraph 37 of Plaintiff's Complaint.

38.     Defendants admit that, during the two-year period from 2017 to 2019, CBP conducted 10 immigration checkpoints that resulted in immigration apprehensions, seizures of

10

illegal narcotics, and the discovery of other violations of law.   Defendants deny any remaining allegations contained in paragraph 38 of Plaintiff's Complaint.

39.     Defendants admit they conducted temporary immigration checkpoints from August 25-27, 2017 and September 26-28, 2017, southbound on I-93 near Woodstock, New Hampshire.  Defendants aver that the location, a strategic funnel point between the White Mountains and the international boundary, is approximately 72 air miles from the United States-Canadian border.  Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations regarding driving miles and, on that basis, deny that allegation. Defendants deny any remaining allegations contained in paragraph 39 of Plaintiff's Complaint.

40.     To the extent paragraph 40 of Plaintiff's Complaint consists of conclusions of law, no response is required. Defendants deny the allegations contained in paragraph 40 of Plaintiff's Complaint.  Defendants state instead that vehicles approached the primary checkpoint area through the normal flow of traffic.  At the primary checkpoint area, Border Patrol agent(s) inquired as to the citizenship of the individuals in the vehicle while dual-detection canines patrolled in the pre-primary and primary areas where the vehicles were approaching and/or stopped.  If a dual-detection canine alerted to a particular vehicle and/or the Border Patrol agent developed suspicion of an immigration violation or other violation of law, the vehicles would typically be referred to the secondary area for a more detailed inspection.  Once a vehicle was referred to the secondary area, depending upon the circumstances, a search of the vehicle may have occurred.

41.     Defendants admit that when small amounts of illegal narcotics were discovered at the Woodstock Checkpoint, they were turned over to Woodstock Police Department.  Defendants deny any remaining allegations contained in the first sentence of paragraph 41 of Plaintiff's

Complaint.  Defendants are without knowledge or information to form a belief as to the allegations contained in the second sentence in paragraph 41 and, on that basis, deny those allegations.  Defendants specifically deny that Woodstock Police Department was present at the Woodstock Checkpoint for the sole purpose of accepting drug seizures; the Woodstock Police Department was present at this checkpoint to handle any state issues that arose and that U.S. Border Patrol could not enforce.  Defendants deny any remaining allegations contained in paragraph 41 of Plaintiff's Complaint.

42.     Defendants admit that illegal narcotics that were discovered at the September 2017 checkpoint were turned over to New Hampshire State Police agents who were present. Defendants deny any remaining allegations contained in paragraph 42 of Plaintiff's Complaint.

43.     Defendants deny the allegations contained in paragraph 43 of Plaintiff's Complaint.

44.     Defendants state that the Woodstock Police Department press release speaks for itself and deny the remaining allegations contained in paragraph 44 of Plaintiff's Complaint.

45.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in the first, second, third, fourth and fifth sentences of paragraph 45 of Plaintiff's Complaint and, on that basis, deny them.  To the extent that the remaining allegations cite to public source material, no response is required.  Should the Court require a response, Defendants deny those allegations.  Defendants admit that the operation of the immigration checkpoint in August 2017 resulted in 25 immigration apprehensions; 14 for overstaying visas and 11 for entries into the United States without inspection.  Defendants are without sufficient knowledge or information to form a belief as to where all the illegal crossings occurred in the Entry Without Inspection apprehensions and, on that basis, deny the allegation

that none of the crossings occurred through Canada.   Defendants admit that Border Patrol agents testified consistently with lack of knowledge regarding unknown crossing locations at the state court suppression hearing.  Defendants deny that "thousands of individuals . . . were needlessly detained because of the checkpoint," and admit that the Border Patrol's press release regarding the Woodstock Checkpoint made no such statement.  Defendants deny any remaining allegations contained in paragraph 45 of Plaintiff's Complaint.

46.     Defendants deny the allegations contained in the first sentence of paragraph 46 of Plaintiff's Complaint.  Defendants admit that Border Patrol agents detained 11 individuals who were lawfully in the United States and ultimately referred them to a New Hampshire State Trooper who was at the checkpoint.  Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations regarding the state charges which were pursued as to the 11 individuals and, on that basis, deny them.  Defendants deny that only eight individuals were detained for immigration issues but aver that eight individuals were apprehended for immigration violations, none of whom were concealed in vehicles that were detected by U.S. Border Patrol's dual-detection canines.  Defendants deny that "thousands of individuals . . . were needlessly detained because of the checkpoint," and admit that the Border Patrol's press release regarding the September 2017 made no such statement.  Defendants deny any remaining allegations contained in paragraph 46 of Plaintiff's Complaint.

47.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 47 of Plaintiff's Complaint and, on that basis, deny them.

48.     Defendants admit that they conducted four immigration checkpoints in 2018 and one in 2019 in the Woodstock/Lincoln, New Hampshire area.  Defendants also admit that they

conducted a checkpoint in 2019 on Interstate 89 in Lebanon, New Hampshire, roughly 81 air miles from the United States-Canadian border.  Defendants deny the remaining allegations contained in paragraph 48 of Plaintiff's Complaint.

49.     Defendants specifically deny that thousands of individuals were "detained" without a warrant or reasonable suspicion during the May 26-28, 2018 checkpoint.  The remaining allegations contained in paragraph 49 consists solely of allegations based on public source material and no response is required.  To the extent this Court requires a response, Defendants admit that the immigration checkpoint conducted from May 26-28, 2018, resulted in 17 immigration apprehensions and the seizure of narcotics in violation of Federal law and deny any remaining allegations.

50.     Defendants specifically deny that thousands of individuals were "detained" without a warrant or reasonable suspicion during the June 15-17, 2018 checkpoint.  Defendants are without sufficient knowledge of information to form a belief as the truth of the remaining allegations, which consist solely of allegations of what the Border Patrol "reported" and, on that basis, deny them.  The remaining allegations contained in paragraph 49 consists solely of allegations based on public source material and require no response.  To the extent this Court requires a response, Defendants admit that the immigration checkpoint conducted from May 26-28, 2018, resulted in 17 immigration apprehensions and the seizure of narcotics in violation of Federal law and deny any remaining allegations.

51.     Defendants admit that CBP did not issue a press release following the August 21-23, 2018; September 27, 2018; and June 9, 2019 checkpoints, but deny that that fact suggests anything other than that no press releases were generated.   The remaining allegation relies on public source material and requires no response.  To the extent this Court requires a response,

Defendants admit that no immigration violations were detected during the August 21-23, 2018 or September 27, 2018 checkpoints; however, the June 9, 2019 checkpoint resulted in the ticketing of 30 immigration violations for failure to carry immigration documents pursuant to  8 U.S.C. § 1304(e).  Defendants deny that hundreds of individuals were needlessly detained, and all remaining allegations contained in paragraph 51 of Plaintiff's Complaint.

52.     The allegations contained in paragraph 52 solely consist of citations to public source materials, which are unrelated to this litigation, to which no response is required.  To the extent this Court requires a response, Defendants deny the allegations contained in paragraph 52 of Plaintiff's Complaint.

53.     The allegations contained in paragraph 53 solely consist of citations to public source materials to which no response is required.  To the extent this Court requires a response, Defendants admit that CBP received a Congressional inquiry dated November 13, 2019, from members of Congress in Vermont, New Hampshire and Maine and state that it speaks for itself.

54.     Defendants deny the allegations contained in paragraph 54, which solely consist of Plaintiff's characterization of the November 13, 2019, Congressional inquiry and refer to the Complaint at n.13 (DN 1 at 17, n. 13).

55.     Defendants deny that Border Patrol has conducted any interior checkpoints in New Hampshire since 2019 and that checkpoints outside of New Hampshire have any relevance to this action.  Defendants deny any remaining allegations contained in the first sentence of paragraph 55 of Plaintiff's Complaint.  Defendants admit that Border Patrol conducted an interior checkpoint on July 21-23, 2020 in Sherman, Maine, 30 air miles from the Canadian Border.  Defendants deny the remaining allegations contained in the second sentence of paragraph 55 of Plaintiff's Complaint.

56.     Defendants deny the allegations contained in paragraph 56 of Plaintiff's Complaint.

57.     Defendants deny the allegations contained in the first sentence of paragraph 57 of Plaintiff's Complaint. The remainder of the allegations contained in paragraph 57 are citations or interpretations of public source material to which no response is required.  To the extent the Court requires a response, Defendants deny the remaining allegations contained in paragraph 57 of Plaintiff's Complaint.

58.     Defendants admit that Plaintiff is a U.S. Citizen.  Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 58 of Plaintiff's Complaint and, on that basis, deny them.

59.     Defendants admit that an immigration checkpoint was conducted on August 26, 2017 on I-93 near Woodstock, New Hampshire and that Plaintiff was processed through the checkpoint.  Defendants lack sufficient knowledge or information to form a belief about the truth of the remaining allegations contained in paragraph 59 of Plaintiff's Complaint and, on that basis, deny them.

60.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 60 of Plaintiff's Complaint and, on that basis, deny them.  Defendants further state that, under federal law and regulations, the distance of checkpoints from an external border are properly measured in air miles, not driving miles.

61.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 61 of Plaintiff's Complaint and, on that basis, deny them.

62.     Defendants are without sufficient knowledge or information as to what Plaintiff witnessed on the highway and, on that basis, deny the allegations contained in the first sentence of paragraph 62 of Plaintiff's Complaint.  Defendants admit the allegations contained in the second sentence of paragraph 62 of Plaintiff's Complaint.

63.      Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 63 of Plaintiff's Complaint and, on that basis, deny them.

64.     Defendants deny that individualized suspicion is required for vehicles entering an immigration checkpoint.  With respect to Plaintiff, Defendants state that individualized suspicion as to his vehicle developed once the dual-purpose canine alerted to the vehicle in the pre-primary area before the Woodstock Checkpoint.  Defendants deny any allegations contained in paragraph 64 of Plaintiff's Complaint.

65.     Defendants deny the allegations contained in paragraph 65 of Plaintiff's Complaint.

66.     Defendants admit that Border Patrol Agents used trained canines to conduct "pre-primary canine free air sniffs" of vehicles waiting at the checkpoints are trained to alert to odors of some controlled substances, as well as concealed humans.  Defendants deny the remaining allegations contained in paragraph 66 of Plaintiff's Complaint.

67.     Defendants admit that if a dual-detection canine alerts to a vehicle in the pre-primary or primary area of the immigration checkpoint, that vehicle is typically referred to the secondary area for inspection.  Defendants deny any remaining allegations contained in paragraph 67 of Plaintiff's Complaint.

68.     Defendants are without specific knowledge or information to form a belief as to the truth of the specific allegations contained in paragraph 68 of Plaintiff's Complaint and, on that basis, deny them.  Defendants further respond that proof of citizenship, on its own, is insufficient to terminate the secondary inspection of a vehicle after a dual-purpose canine alerts to the vehicle, as the inspecting Border Patrol agent(s) has an obligation to confirm or dispel the presence of a concealed human and/or the presence of illegal narcotics.

69.     Defendants are without sufficient knowledge or information as to the truth of the specific allegations contained in paragraph 69 of Plaintiff's Complaint and, on that basis, deny them.

70.     Defendants are without sufficient knowledge or information as to the truth of the specific allegations contained in paragraph 70 of Plaintiff's Complaint and, on that basis, deny them.  Defendants further respond that a dual-detection canine alerted to the vehicle in which Plaintiff was a passenger causing the vehicle to be referred for secondary inspection.

71.     Defendants are without sufficient knowledge or information as to the truth of the specific allegations contained in paragraph 71 of Plaintiff's Complaint and, on that basis, deny them.  Defendant further responds that for safety reasons, occupants of a vehicle are asked to remain outside the vehicle while a Border Patrol agent and his or her dual-detection canine performs a vehicle search.  Defendants admit that the occupants of Plaintiff's vehicle voluntarily exited the vehicle.

72.     Defendants admit that the occupants of Plaintiff's vehicle remained outside the vehicle while the secondary inspection of the vehicle was performed by personnel at the checkpoint, including Agent Qualter and his service canine Marian.  Defendants are without

sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 72 of Plaintiff's Complaint and, on that basis, deny them.

73.     Defendants are without sufficient knowledge or information as to the truth of the specific allegations contained in paragraph 73 of Plaintiff's Complaint and, on that basis, deny them.

74.     Defendants admit that a routine search of the vehicle in which Plaintiff was a passenger was performed by Agent Qualter and his dual-detection canine.  Defendants specifically deny that the canine failed to alert to an odor in the vehicle as well as any remaining allegations contained in paragraph 74 of Plaintiff's Complaint.

75.     Defendants deny the allegations contained in the first sentence of paragraph 75 of Plaintiff's Complaint.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 75 of Plaintiff's Complaint and, on that basis, deny them.

76.     Defendants deny the allegations contained in paragraph 76 of Plaintiff's Complaint.

77.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the specific allegations contained in paragraph 77 and, on that basis, deny them. Defendants further respond that Plaintiff produced the illegal substance from the interior of the vehicle.

78.     Defendants admit that the substance produced by Plaintiff was field tested at the Woodstock Checkpoint and found to be hash oil, an illegal narcotic, and because the amount of illegal narcotic was insufficient to support a federal prosecution, the substance was turned over to the Woodstock Police Department for appropriate action.  Defendants are without sufficient

knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 78 of Plaintiff's Complaint and, on that basis, deny them.

79.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 79 of Plaintiff's Complaint and, on that basis, deny them.

80.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 80 of Plaintiff's Complaint and, on that basis, deny them.

81.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 81 of Plaintiff's Complaint and, on that basis, deny them.

82.    Defendants deny the allegations contained in paragraph 82 of Plaintiff's Complaint.

83.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 83 of Plaintiff's Complaint and, on that basis, deny them.

84.    Defendants admit that Plaintiff and others challenged state charges and moved to suppress evidence seized at the checkpoint on state and federal constitutional grounds. Defendants deny any remaining allegations in this paragraph.

85.    Defendants admit that Judge Thomas A. Rappa of the 2nd Circuit (District Division) in Plymouth, New Hampshire held a suppression hearing on January 11, 2018.  To the extent paragraph 85 quotes testimony from that suppression hearing, the Court is referred to the

hearing transcript (DN 33-1) as that documents speaks for itself.  Defendants deny the remaining allegations contained in paragraph 85.

86.     Defendants admit that, on May 1, 2018, Judge Rappa found that the evidence seized during this August 2017 checkpoint violated the federal constitution and the New Hampshire state constitution and granted a Consolidated Motion to Suppress any evidence seized during this checkpoint.  Defendants deny any remaining allegations contained in paragraph 86 of Plaintiff's Complaint.

87.     Defendants admit that Judge Rappa issued a decision, which speaks for itself. Defendants deny the remaining the allegations contained in paragraph 87 of the complaint.

88.     The allegations contained in paragraph 88 of Plaintiff's Complaint solely consist of a characterization of Judge Rappa's decision.  Defendants refer to Judge Rappa's order (DN 1-1), which speaks for itself.  To the extent the Court requires a response, Defendants deny the allegations contained in paragraph 88 of Plaintiff's Complaint.

89.     Defendants deny the remaining allegations contained in paragraph 89 of Plaintiff's Complaint.

90.     Defendants admit that Judge Rappa suppressed evidence based on alleged violations of the New Hampshire and federal constitutions. Defendants deny that such violations occurred.

91.     Defendants admit the allegations contained in paragraph 91 of Plaintiff's Complaint but refer to the court's order for full context.  DN 1-2.

92.     Defendants admit the allegations contained in paragraph 92 of Plaintiff's Complaint.

93.     Defendants deny the allegations contained in paragraph 93 of Plaintiff's Complaint.

94.     Defendants deny that Plaintiff was subject to a violation of the United States Constitution by federal agents at the Woodstock Checkpoint.  Defendants are without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 94 and, on that basis, deny them.

95.     Defendants are without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 95 and, on that basis, deny them.

96.     Defendants are without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 96 and, on that basis, deny them.

97.     Defendants are without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 97 and, on that basis, deny them.

98.     Defendants deny the allegations contained in the first sentence of paragraph 98 of Plaintiff's Complaint.  Defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 98 and, on that basis, deny them.

99.     Defendants specifically deny that they conducted immigration checkpoints in violation of the United States Constitution and that there are any immigration checkpoints scheduled to occur in New Hampshire or plans to conduct any in New Hampshire.  The defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 99 of Plaintiff's Complaint and, on that basis, deny them.

100.    Defendants specifically deny that they conducted immigration checkpoints in violation of the United States Constitution and that there are any immigration checkpoints

scheduled to occur in New Hampshire or plans to conduct any in New Hampshire.  To the extent

that the allegations in paragraph 100 cite to public source material, that material speaks for itself

and no response is required.  The defendants are without sufficient knowledge or information to

form a belief as to the truth of the remaining allegations contained in paragraph 100 of Plaintiff's

Complaint and, on that basis, deny them.

101.    Defendants specifically deny that they conducted immigration checkpoints in

violation of the United States Constitution and that there are any immigration checkpoints

scheduled to occur in New Hampshire or plans to conduct in New Hampshire.  The defendants

are without sufficient knowledge or information to form a belief as to the truth of the remaining

allegations contained in paragraph 101 of Plaintiff's Complaint and, on that basis, deny them.

102.    Defendant reasserts its responses to paragraphs 1 through 101 as set forth above.

103.    No response is required to this paragraph as the *Bivens* claims have been

dismissed.  DNs 23, 49.

104.    No response is required to this paragraph as the *Bivens* claims have been

dismissed.  DNs 23, 49.

105.    No response is required to this paragraph as the *Bivens* claims have been

dismissed.  DNs 23, 49.

106.    No response is required to this paragraph as the *Bivens* claims have been

dismissed.  DNs 23, 49.

107.    Defendants reassert their responses to paragraphs 1 through 106 as set forth

above.

108.    Defendants deny the allegations contained in paragraph 108 of Plaintiff's

Complaint.

109.    Defendants deny the allegations contained in paragraph 109 of Plaintiff's Complaint.

110.    Defendants deny the allegations contained in paragraph 110 of Plaintiff's Complaint.

111.    Defendants deny the allegations contained in paragraph 111 of Plaintiff's Complaint.

112.    Defendants deny the allegations contained in paragraph 112 of Plaintiff's Complaint.

113.    Defendants deny the allegations contained in paragraph 113 of Plaintiff's Complaint.

114.    Defendants deny the allegations contained in paragraph 114 of Plaintiff's Complaint.

115.    Defendants deny the allegations contained in paragraph 115 of Plaintiff's Complaint.

116.    Defendants deny the allegations contained in paragraph 116 of Plaintiff's Complaint.

117.    Defendants deny the allegations contained in paragraph 117 of Plaintiff's Complaint.

118.   This paragraph consists of a demand for a jury trial.  As the sole surviving claims are for equitable relief, Defendants deny that the plaintiff is entitled to a jury trial.

To the extent that any allegation in the Complaint is not explicitly and specifically admitted, Defendants deny it.

Therefore, Defendants request that the Court dismiss this action with prejudice. and that they be awarded their costs.

JOHN J. FARLEY
Acting United States Attorney

By:  /s/ Robert J. Rabuck
Robert J. Rabuck
Assistant U.S. Attorney
New Hampshire Bar No. 2087
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552
Rob.Rabuck@usdoj.gov

By: /s/ Michael McCormack
Michael McCormack
Assistant U.S. Attorney
New Hampshire Bar No. 16470
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552
Michael.McCormack2@usdoj.gov

Dated: June 1, 2021